## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF NEW JERSEY

| | |
|---|---|
| UAW GROUP HEALTH AND WELFARE PLAN<br>56 Vineyard Road<br>Edison, NJ 08817,<br><br>and<br><br>TRUSTEES OF UAW GROUP HEALTH<br>AND WELFARE PLAN<br>56 Vineyard Road<br>Edison, NJ 08817,<br>        *Plaintiffs,*<br><br>    v.<br><br>SYNRAY CORPORATION<br>209 N. Michigan Avenue<br>Kenilworth, NJ 07033,<br>        *Defendant* | CIVIL ACTION<br>NO. |

## COMPLAINT

### JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to §502(a)(3)(B), (d)(1) and (f) and §4301(a)(1) and (c) of the Employee Retirement Income Security Act (hereinafter "ERISA"), 29 U.S.C. §§1132 (a)(3)(B), (d)(1) and (f) and §1451(a)(1) and (c), respectively.

2. This Court is one of proper venue under ERISA §§502(e)(2) and 4301(d), 29 U.S.C. §§1132(e)(2) and 1451(d), respectively, because Plaintiff UAW Group Health and Welfare Plan (hereinafter the "Health Plan") is administered in New Jersey.

### PARTIES

3. At all times relevant hereto, Plaintiff Health Plan is a trust fund established under 29 U.S.C. § 186(c)(5) and "welfare plan" and "multiemployer plan" and "employee benefit plan" within the meaning of 29 U.S.C. § 1002(37), (1), (2) and (3).

4. Plaintiffs Trustees of UAW Group Health and Welfare Plan (hereinafter the "Trustees") are trustees and fiduciaries for the Health Plan within the meaning of 29 U.S.C. §1002(21). They are authorized to bring this action on behalf the Health Plan.

5. Defendant Synray Corporation (hereinafter the "Company") is an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§152(2), (6) and (7), 1002(5), (11) and (12) which maintains the business address listed in the caption.

6. At all times relevant hereto, the Company was a party to a collective bargaining agreement with the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America Local 2326 ("Union") whereby it agreed to make contributions to the Health Plan on behalf of its bargaining unit employees covered by the collective bargaining agreement. See a true and correct copy of the collective bargaining agreement effective November 1, 2010 through October 31, 2015 is attached hereto as Exhibit A.

7. By agreeing to contribute to the Health Plan, the Company adopted the Trust Agreement that governs the Health Plan, as well as the rules and regulations that the Trustees issued by the Trustees pursuant to the Trust Agreement.

8. The Trustees have issued a Policy for Collection of Delinquent Contributions, Payroll Audits and Refund of Mistaken Contributions ("Delinquency Policy"). A true and correct copy of the Delinquency Policy is attached hereto as Exhibit B.

9. Under the Delinquency Policy and pursuant to 29 U.S.C. §1132(g)(2)(B), each monthly contribution that is not received by its respective due date is charged interest at a rate of one percent (1%) simple interest per month or portion of a month that the contribution. Exhibit B, at Section 2, ¶4 (p. 2).

10.  In addition, under the Delinquency Policy and pursuant to 29 U.S.C. §1132(g)(2)(C), each monthly contribution that is not received by its respective due date is charged liquidated damages equal to ten percent (10%) of the delinquent amount, and charged an additional ten percent (10%) liquidated damages if the delinquency is unpaid more than thirty days from its due date, for a total of twenty percent (20%) liquidated damages on any delinquency that is more than thirty days delinquent. Exhibit B, at Section 2, ¶¶2-3 (p. 2).

**CAUSE OF ACTION**

11.  The above paragraphs are incorporated herein by reference as though duly set forth at length.

12.  The Health Plan conducted a payroll audit to determine if the correct amounts were reported and contributed by the Company for the period between January 1, 2012 and December 31, 2014.

13.  At the conclusion of the audit, the Health Plan's auditor issued a report documenting that a total of $549,017.86 in additional contributions were due for the audit period ("Audit Report"). A true and correct copy of the Audit Report is attached hereto as Exhibit C.

14.  By letter dated January 23, 2018, the auditor sent a draft version of the Audit Report to the Company and ask that it review the findings and "advise us of any adjustment or challenges to our findings." The letter concluded: "If we have not heard from you within ten business days from the date of this letter, we will submit our report to the Fund Administrator," thus finalizing the report. A true and correct copy of the auditor's January 23, 2018 letter is attached hereto as Exhibit D.

15.  The Company did not respond to the January 23, 2018 letter.

16. On February 5, 2018, the auditor sent a copy of the Audit Report to the Fund Administrator, finalizing the audit report. A true and correct copy of the February 5, 2018 letter is attached hereto as Exhibit E.

17. On September 5, 2018, the Health Plan, through its attorney, sent a letter to the Company demanding payment for the $549,017.86 principal delinquency identified in the Audit Report, plus $325,177.32 in interest. A true and correct copy of the September 5, 2018 letter is attached hereto as Exhibit F.

18. On September 20, 2018, the Colleen Merendino from the Company spoke to the Health Plan's counsel on the telephone. During that call she claimed to not know that the payroll audit showed that anything was owed. She also denied ever receiving the January 23, 2018 letter, even though the letter was addressed to her. (See Exhibit D)

19. After the phone call ended, the Health Plan's counsel emailed Mr. Merendino a copy of the January 23, 2018 letter, along with the Audit Report. A true and correct copy of the September 20, 2018 email with attachment is attached hereto as Exhibit G.

20. On January 14, 2019, Richard Sgrignolli, the Health Plan's administrator, emailed Mr. Merendino to schedule a conference call between the Company, the auditor and the Health Plan's attorney to discuss the liability. The Company responded that it would not schedule a conference call until the Health Plan's attorney responds to an email from Peter Tepperman, the Company's CEO. The attorney, however, had not received an email from Mr. Tepperman. A true and correct copy of the January 14, 2019 to January 15, 2019 email exchange is attached hereto as Exhibit H.

21.     Thereafter, the Company forwarded a September 20, 2018 email to the Health Plan's attorney which had been sent to the wrong email address.[1] After that email was forwarded to the Health Plan, Mr. Sgrignolli again requested a call with the Company to discuss the liability. A true and correct copy of the January 15, 2019 to January 23, 2019 email exchange, including the forwarded email from September 20, 2018, is attached hereto as Exhibit I.

22.     On or about September 23, 2019, Mr. Tepperman spoke to Mr. Sgrignolli on the telephone. During that call, Mr. Tepperman flatly denied that the Company owed anything to the Health Plan. Mr. Sgrignolli asked him to provide documentation to show that the auditor's findings were in error, but Mr. Tepperman refused.

23.     To date, the Company has failed and refused to provide any documentation to establish that any of the auditor's findings were erroneous.

24.     Despite the repeated notice of the delinquency and amount due, the Company failed and refused to pay the amounts owed.

25.     The Company's conduct breaches the terms of the collective bargaining agreement and 29 U.S.C. § 1145.

26.     In addition to the principal delinquency revealed by the audit, the Company owes interest, liquidated damages, and attorneys' fees and costs pursuant to the Delinquency Policy and 29 U.S.C. §1132(g)(2).

WHEREFORE, plaintiffs ask that the Court:

    (1)     Enter judgment in favor of the Health Plan and against the Company in the amount of $549,017.86 for unpaid principal contributions for the January 1, 2012 through December 31, 2014 audit period, pursuant to 29 U.S.C. §1132(g)(2)(A);

---

[1] The Health Plan's attorney's email address is jbrodsky@cjtlaw.org, but Mr. Tepperman sent his September 20, 2018 email to jbrodsky@cjtlaw.com.

(2) Enter judgment in favor of the Health Plan and against the Company for interest on the amounts awarded in paragraphs (1) above, calculated at the rate of one percent (1%) simple interest per month pursuant to the Delinquency Policy and 29 U.S.C. §1132(g)(2)(B);

(4) Enter judgment in favor of the Health Plan and against the Company for $109,803.57 (20% of the principal in (1)) in liquidated damages pursuant the Delinquency Policy and 29 U.S.C. §1132(g)(2)(C) and the;

(5) Enter judgment in favor of the Health Plan and against the Company for attorneys' fees and costs, pursuant to the Delinquency Policy and 29 U.S.C. §1132(g)(2)(D); and

(6) Grant any other further relief the court finds just and proper.

**CLEARY, JOSEM & TRIGIANI LLP**

BY: /s/ Jeremy E. Meyer
JEREMY E. MEYER, ESQUIRE
Constitution Place
325 Chestnut Street – Suite 200
Philadelphia, PA   19106
(215) 735-9099
jmeyer@cjtlaw.org

*Attorney for Plaintiffs*

Dated:  July 18, 2019